# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| REINO ALE ROUSU, | Case No. 25-cv-3683 (LMP/LIB) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| STATE OF MINNESOTA; SARAH STROMMEN, *in her official capacity as Commissioner of the Minnesota Department of Natural Resources*; JORDAN ANDERSON, *in their official and individual capacity as Conservation Officer*; JACOB SWEDBERG, *in their official and individual capacity as Conservation Officer*; PHIL SEEFELDT, *in their official and individual capacity as Conservation Officer*; HANNAH MISHLER, *in their official and individual capacity as Conservation Officer*; and JOHN DOES, *in their individual and official capacities*, | |
| Defendants. | |

Reino Ale Rousu, pro se.

Ryan Petty, **Office of the Minnesota Attorney General, Saint Paul, MN**, for Defendants.

On September 15, 2025, Plaintiff Reino Ale Rousu was charged in Minnesota state court with three counts of illegal wild rice harvesting under Minnesota law. *See State v. Rousu*, No. 03-CR-25-1950, Index #1 at 1–2 (Minn. Dist. Ct. filed Sept. 15, 2025). Rousu, who is Anishinaabe and an enrolled member of the White Earth Band of Ojibwe (also referred to as Chippewa), brought this lawsuit the next day, asserting that his wild rice

harvesting was protected by an 1855 treaty with the Chippewa. *See generally* ECF No. 1. Rousu alleges that Defendants—the State of Minnesota, various Minnesota Department of Natural Resources ("DNR") officials, and unspecified "John Does"—seized his harvesting equipment and wild rice in violation of his federal rights under the treaty, and that the seizures constitute conversion under Minnesota common law. *See id.* at 5–6.

Defendants move to dismiss Rousu's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 9, asserting that Rousu fails to state a claim upon which relief can be granted or that his claims otherwise are barred by sovereign immunity or qualified immunity, *see* ECF No. 15 at 6–15. However, because the central assertion underlying Rousu's claims here—that the 1855 treaty preempts Minnesota law— is also at issue in the ongoing Minnesota state criminal proceedings against Rousu, the Court abstains from exercising jurisdiction over his claims arising under federal law in accordance with the *Younger* abstention doctrine, declines to exercise supplemental jurisdiction over his conversion claim arising under Minnesota common law, and dismisses Rousu's complaint without prejudice.

## BACKGROUND

To put Rousu's complaint in context, a brief discussion of the treaty rights underlying Rousu's claims is in order. In 1837, the United States entered a treaty with the Chippewa (the "1837 Treaty") under which the Chippewa agreed to cede territory to the United States, and the United States guaranteed to the Chippewa certain usufructuary rights, specifically the "privilege of hunting, fishing, and gathering the wild rice, upon the lands, the rivers and the lakes included in the territory ceded." Treaty with the Chippewa,

Chippewa Nation-U.S., July 29, 1837, 7 Stat. 536. The United States and the Chippewa entered another treaty in 1855 (the "1855 Treaty") under which the Chippewa ceded additional territory, and the United States established reservations for several Chippewa bands in Minnesota. *See* Treaty with the Chippewas, Chippewa Nation-U.S., Feb. 22, 1855, 10 Stat. 1165. The 1855 Treaty did not disturb the usufructuary rights established in the 1837 Treaty. *See generally id.*; *see also Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 184–85 (1999) (noting that the 1855 Treaty "makes no mention of hunting and fishing rights, whether to reserve new usufructuary rights or to abolish rights guaranteed by previous treaties").

Now, to the present. On August 28, 2025, Rousu was allegedly seen harvesting wild rice (known as *manoomin*) using a motor-propelled airboat with a mechanical harvester on Height of Land Lake in Becker County, Minnesota, a public body of water within the territory ceded under the 1855 Treaty. *See* ECF No. 1 at 4; *Rousu*, Index #1 at 3.[1] Law enforcement was notified at approximately 6:30 p.m., and around 7:40 p.m., Defendants Jordan Anderson and Jacob Swedberg, Conservation Officers with the DNR, arrived at the lake and observed Rousu and two other individuals removing bags of rice from the airboat. *Rousu*, Index #1 at 3. The next day, conservation officers "aerially inspected the Height of Land Lake and observed damage to the rice in the area the airboat was used." *Id.*

---

[1] The Court may take judicial notice of public judicial records. *E.g.*, *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005).

Under Minnesota law, it is unlawful to use "any watercraft other than a boat, skiff, or canoe propelled by hand" to harvest wild rice in public waters, Minn. Stat. § 84.111, subd. 1; to "use in such harvesting any machine or device for gathering the grain other than a flail . . . held and operated by hand," *id.*, subd. 3; and to "harvest any wild rice in any public waters between 3:00 p.m. and 9:00 a.m." unless "expressly permitted," *id.*, subd. 4. Rousu alleges he was not immediately cited for violating these provisions by Officers Anderson and Swedberg, but they seized his airboat and "approximately 300 pounds of rice, including rice which had not been harvested from Height of Land Lake with the airboat." ECF No. 1 at 4; ECF No. 1-1 at 1. On September 15, 2025, Rousu was charged with three misdemeanor counts of unlawful wild rice harvesting under Minn. Stat. § 84.111. *See Rousu*, Index #1 at 1–2, 7. The criminal penalty for each violation includes up to 90 days in jail and a fine of up to $1,000. *See id.* at 1–2; *see also* Minn. Stat. § 84.42, subd. 1; Minn. Stat. § 609.02, subd. 3.

Rousu filed this lawsuit the next day. ECF No. 1 at 1. Rousu brings five claims: (1) a claim for "Violation of Treaty Rights" under the Supremacy Clause of the United States Constitution, asserting that the 1855 Treaty "preempts Minnesota law"; (2) a claim under 42 U.S.C. § 1983, asserting that Defendants deprived him of "rights secured by the Constitution and treaties of the United States"; (3) a second claim under 42 U.S.C. § 1983, asserting that the seizure of his airboat and the wild rice he harvested "constitutes an unreasonable seizure in violation of the Fourth Amendment"; (4) a claim under 28 U.S.C. § 2201 for a declaratory judgment that "he retains the right to harvest wild rice on ceded territory without state interference"; and (5) a common law claim for conversion relating

4

to the seizures of his airboat and the wild rice he harvested. *Id.* at 5–6. Rousu seeks a declaration that he "has a treaty-reserved right to harvest wild rice on ceded territory free from state regulation"; an injunction preventing the enforcement of "Minnesota wild rice regulations against [him] and other similarly situated tribal members"; the "immediate return" of his airboat and rice; and awards of compensatory and punitive damages. *Id.* at 6.

## ANALYSIS

Defendants move to dismiss Rousu's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 9. Defendants assert that Rousu's complaint should be dismissed in its entirety because it fails to state a claim on all counts. *See* ECF No. 15 at 6–11. Defendants also argue that Rousu's Section 1983 and conversion claims against the State of Minnesota and the DNR officials in their official capacities are barred by sovereign immunity to the extent Rousu seeks monetary damages. *See id.* at 11–12. Defendants further argue that Rousu's Section 1983 and conversion claims against the DNR officials in their individual capacities are barred by qualified immunity. *See id.* at 12–15. Finally, Defendants argue that because Rousu's claims arising under federal law fail, the Court should decline to exercise supplemental jurisdiction over his conversion claim arising under Minnesota common law. *See id.* at 15.

The Court observes, however, that there is significant overlap between the issues underlying Rousu's federal claims here and the issues raised in his ongoing state criminal proceedings—namely, whether Minnesota state law regulating the harvesting of wild rice, as applied to Rousu, is preempted by the 1855 Treaty. *See* ECF No. 1 at 5–6. This raises the question whether the Court must abstain from exercising jurisdiction over Rousu's

federal claims in accordance with *Younger v. Harris*, 401 U.S. 41 (1971).[2]  Because a

decision on the merits of Rousu's federal claims would have the effect of interfering in his

ongoing state criminal proceedings, the Court concludes that the *Younger* abstention

doctrine applies.

I.      *Younger* **Abstention**

"Federal courts have a 'virtually unflagging obligation' to decide cases that fall

within their jurisdiction."  *Wassef v. Tibben*, 68 F.4th 1083, 1086 (8th Cir. 2023) (quoting

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  In

*Younger*, the Supreme Court "carved out a narrow exception to this well-established

principle," holding that "concepts of comity and federalism require federal courts to abstain

from interfering with pending state court criminal proceedings, except under 'special

circumstances' such as bad-faith prosecution or when a criminal statute is 'flagrantly and

patently' unconstitutional on its face."  *Id.* at 1086–87 (quoting *Younger*, 401 U.S. at 41,

44–45, 53–54).  When deciding whether the *Younger* abstention doctrine applies, courts

consider whether "(1) there is an ongoing state proceeding, (2) that implicates important

state interests, and (3) that provides an adequate opportunity to raise any relevant federal

questions."  *Arseneau v. Pudlowski*, 110 F.4th 1114, 1117 (8th Cir. 2024).

*Younger* abstention plainly applies to Rousu's federal claims.  There is no indication

that the state criminal proceedings were brought in bad faith or that the Minnesota statute

---

[2]      A district court may raise and consider *Younger* abstention sua sponte.  *See, e.g.*,
*Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 676, 678 (8th Cir. 2013); *Ashford v. Off. for
Couns. for Discipline*, 805 F. App'x 446, 446 (8th Cir. 2020) (per curiam).

under which he was charged is facially unconstitutional.  *See Mille Lacs*, 526 U.S. at 205

("We have repeatedly reaffirmed state authority to impose reasonable and necessary

nondiscriminatory regulations on Indian hunting, fishing, and gathering rights in the

interest of conservation.").  Rousu is currently involved in state criminal proceedings,

which is one of the categories of "exceptional circumstances" that "justify a federal court's

refusal to decide a case in deference to the States" under *Younger*.  *Sprint Commcn's, Inc. v.

Jacobs*, 571 U.S. 69, 78 (2013) (citation omitted).  And those proceedings implicate

important state interests, namely the balance between Minnesota's "interest in management

of its natural resources and the Chippewa's federally guaranteed treaty rights."  *Mille Lacs*,

526 U.S. at 205.

Most compellingly, Rousu has "an adequate opportunity to raise federal challenges"

in his state criminal proceedings.  *Wassef*, 68 F.4th at 1087.  Indeed, Rousu has sought

dismissal of the state criminal charges on the same legal theory relating to his purported

rights under the 1855 Treaty that underlies his federal claims here:

> Mr. Rousu moves to dismiss this case for violating the usufructuary rights
> reserved to him under the treaties by which Ojibwe signatories ceded land to
> the United States; as a member of the White Earth Band, Mr. Rousu enjoys a
> right to harvest wild rice within the 1855 Treaty-ceded territory which is
> supreme to state criminal laws.

*State v. Rousu*, No. 03-CR-25-1950, Index #12 at 1 (Minn. Dist. Ct. filed Dec. 17, 2025).[3]

If the Minnesota state court agrees that Rousu's purported treaty rights supersede

Minnesota law, then there is no need for this Court to decide the issue.  If not, and Rousu

---

[3]     Rousu's motion to dismiss the state criminal proceedings remains pending as of the
date of this Order.

ultimately is convicted, he has preserved his argument for appeal.  *See* Minn. R. Crim. App. P. 28.02, subd. 2(1).  But if this Court were to exercise jurisdiction over Rousu's federal claims, and Rousu prevailed on those claims before his state criminal proceedings concluded, granting Rousu the relief he seeks would vitiate the state criminal proceedings. *See* ECF No. 1 at 6 (seeking, among other things, a declaration that Rousu "has a treaty-reserved right to harvest wild rice on ceded territory free from state regulation" and an injunction preventing the enforcement of "Minnesota wild rice regulations against" Rousu).  It is decidedly not this Court's place to interfere in those proceedings in such a way. *See Younger*, 401 U.S. at 41, 44–45, 53–54.

For these reasons, the Court must abstain from exercising jurisdiction over Rousu's claims arising under federal law.  *See Wassef*, 68 F.4th at 1086–87.  The question, therefore, is whether to dismiss those claims or to stay these proceedings pending a final determination on the merits in Rousu's state criminal proceedings.

Dismissal under *Younger* is appropriate where the plaintiff seeks equitable relief, such as an injunction or a declaratory judgment.  *See Night Clubs, Inc. v. City of Fort Smith*, 163 F.3d 475, 481 (8th Cir. 1998); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 731 (1996) ("[F]ederal courts have the power to dismiss . . . cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary."). Therefore, to the extent Rousu seeks injunctive or declaratory relief in connection with his claims arising under federal law, those claims are dismissed without prejudice.

But Rousu also seeks compensatory relief in connection with at least one of his Section 1983 claims. *See* ECF No. 1 at 5 ("Defendants are liable for damages and equitable

relief under 42 U.S.C. § 1983."). In such cases, the Supreme Court "instructs that traditional abstention principles generally require a stay as the appropriate mode of abstention." *Night Clubs*, 163 F.3d at 481 (citing *Quackenbush*, 517 U.S. at 730). There is an exception to this general rule, however: dismissal of a Section 1983 claim for damages is appropriate where the award of damages would first require a court to "declare unconstitutional a state statute or to overturn a state court judgment on a matter of state policy." *Id.* at 482; *see also Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 115 (1981) (holding that a federal court should not entertain a Section 1983 suit for damages that would have required a determination of the constitutionality of a state's tax laws); *Amerson v. Iowa*, 94 F.3d 510, 512–13 (8th Cir. 1996) (affirming dismissal under *Younger* of a Section 1983 claim for damages that would have required a declaration that a state-court termination of parental rights was unconstitutional).

Here, Rousu's Section 1983 claim for damages would require a declaration that Minnesota's laws governing wild rice harvesting, as applied to Rousu, are either unconstitutional or preempted by the 1855 Treaty. *See* ECF No. 1 at 5 ("Defendants, acting under color of state law, deprived Plaintiff of rights secured by the Constitution and treaties of the United States."). The Court therefore concludes that the exception to the general rule against dismissal on abstention principles of Section 1983 claims for damages applies. *See Quackenbush*, 517 U.S. at 719; *Amerson*, 94 F.3d at 513. Accordingly, to the extent

9

Rousu seeks an award of damages in connection with his Section 1983 claims, those claims also are dismissed without prejudice.[4]

## II.    Remaining Claim

The only claim remaining is Rousu's common law conversion claim.  *See* ECF No. 1 at 5–6.  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Minnesota ex rel. Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 708 (8th Cir. 2023) (quoting *Gunn v. Minton*, 586 U.S. 251, 256 (2013)).  In this case, the Court has original jurisdiction over Rousu's Supremacy Clause, Section 1983, and declaratory judgment claims under 28 U.S.C. § 1331 because they arise under federal law.  But because Rousu's conversion claim arises under Minnesota common law, the Court is authorized to hear that claim only under 28 U.S.C. § 1367(a), which permits a court to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy."  When a court "has dismissed all claims over which it has original jurisdiction," the court "may decline to exercise supplemental jurisdiction" over any remaining claims.  28 U.S.C. § 1367(c)(3).

The Court has dismissed all of Rousu's claims over which it has original jurisdiction.  Accordingly, the Court declines to exercise supplemental jurisdiction over Rousu's remaining conversion claim and dismisses it without prejudice "so that it may be

---

[4]    Given the Court's dismissal under *Younger* of the four federal claims brought by Rousu, the Court need not address the Defendants' separate grounds for dismissal, including failure to state a claim, ECF No. 15 at 6–11, sovereign immunity, *id.* at 11–12, and qualified immunity, *id.* at 12–15.

considered, if at all, by the courts of Minnesota." *Hervey v. County of Koochiching*, 527 F.3d 711, 726 (8th Cir. 2008).

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED** as to Rousu's conversion claim arising under Minnesota common law and is **DENIED** as moot as to Rousu's claims arising under federal law; and

2. Rousu's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for the reasons discussed above.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 23, 2026                              *s/Laura M. Provinzino*
                                                   Laura M. Provinzino
                                                   United States District Judge

11